[Civ. No. 6218.   Fourth Dist.   Dec. 16, 1959.]

MAYME A. SCROGGS, Respondent, v. NORTHWESTERN MUTUAL LIFE INSURANCE CORPORATION (a Corporation), Appellant.

Clarence Sprague and Jean Wunderlich for Appellant.

Thurman & Barrett and Ernest V. Barrett for Respondent.

MONROE, J. pro tem.* — The plaintiff and respondent brought this action upon a life insurance policy issued by the defendant in the amount of $5,000, upon the life of her husband Earl P. Scroggs. The policy was taken out on February 10, 1956, and Mr. Scroggs died on March 20, 1956. An autopsy established that death was the result of a thrombosis. The autopsy surgeon testified that the heart showed evidence of a prior thrombosis which he estimated had taken place about eight years previous. The defendant alleged that the policy was invalid by reason of false representation and fraudulent concealment of material facts in the application made by Mr. Scroggs. The court found the issues in favor of the plaintiff and entered judgment for plaintiff in accordance with the prayer of the complaint. A motion for new trial having been denied, defendant appeals.

The application for insurance contained the following question and answer: "12. Has any physician, practitioner, or healer examined, advised or treated you within the last 5 years? No." The evidence established that on January 2d, 1953, the deceased had come to the office of Dr. Arthur Ferree. The doctor produced his office record as follows:

"Jan. 2-53: Pain in upper abdomen that radiates out into both arms. It has been coming in short bouts of about fifteen minutes until last night, but last night it was almost continuous. Examination of abdomen indicated, scheduled for G-I series. Sample of barbatrate-A for temporary relief."

It is the contention of the appellant that the question and answer were material to the application and the issuance of the policy; that had a truthful answer been made an investigation would have followed which would have revealed infor-

---

*Assigned by Chairman of Judicial Council.

mation such that no policy would have issued. Appellant claims that the findings and judgment of the court are unsupported by substantial evidence and are contrary to law.

The policy contains the following language: "All statements made in the application shall, in the absence of fraud, be deemed representations and not warranties. No statement shall avoid this policy or be used in defense of a claim under it unless contained in the application."

It is the general rule that the answers to written questions in an application for insurance are deemed to be material representations. (*California-Western States Life Ins. Co.* v. *Feinstein,* 15 Cal.2d 413 [101 P.2d 696, 131 A.L.R. 608].) However, it is for the court, upon an examination of all of the evidence, to determine whether a representation of fact is of such materiality as would justify a cancellation of a contract, assuming that the other requisites for such relief exist. The materiality of an answer to a question of this character is to be determined not only from the fact that it is information which the company deems material, but also from a determination as to whether a correct answer to the question would have revealed information of such character that no contract would have been made. It is therefore the established law that a representation of this character, although untrue, will not be considered such material representation as will invalidate the insurance policy where the occasion for an interview with a physician was a trivial indisposition. (*Travelers Ins. Co. of Hartford, Conn.* v. *Byers,* 123 Cal.App. 473 [11 P.2d 444]; *Poole* v. *Grand Circle W. O. W.,* 18 Cal.App. 457 [123 P. 349]; *Ransom* v. *Penn Mutual Life Ins. Co.,* 43 Cal.2d 420 [274 P.2d 633].)

The difficulty with appellant's contention is that it was unable to produce sufficient satisfactory evidence to support its claims. Dr. Ferree testified that he had no recollection at all of Mr. Scroggs or his office visit. The only information that he could give was what he inferred from the notes heretofore quoted. He indicated that he made no diagnosis of any heart difficulty; that he suggested further examination of the patient's digestive tract and gave him for temporary relief a few sample pills to relieve stomach discomfort. The patient never returned and the doctor never saw him again. The interview was apparently but a brief one judging from the fact that a $3.00 fee was charged.

The doctor who took the application for insurance professed to have no recollection of the matter whatever and the

only information that could be obtained from him was that the handwriting on the application looked something like his own. No witness could be produced who had any recollection of the application as it went through the regular channels prior to the issuance of the policy. Witnesses on behalf of the company gave evidence to the effect that the information called for in answer to the question was material to the company.

As heretofore stated, however, the issue of the materiality of the representation is to be determined not only from the standpoint of its desirability by the company as an aid to determine whether the applicant was an insurable risk, but also in the light of the information that would have been forthcoming. The testimony of the plaintiff was to the effect that deceased was engaged in the operation of a restaurant; that during the period in question he worked every day, seven days a week, and that he had never made complaint of any illness. Nothing was asked her as to this particular trip to the doctor's office and it is to be assumed from the record that she knew nothing about it at all.

The trial court was therefore confronted with the situation that had the deceased revealed this one interview with the doctor and had the matter been investigated further, in all probability the only information that would have been received was that the deceased felt indisposed; that he went to the doctor's office; that the doctor considered the matter as nothing more than a trivial indisposition or stomach upset; that the patient was given a sample of pills for the relief of stomach distress; and that the trouble disappeared. It would probably have developed also that the deceased lost no time from work and had no further suffering.

That the deceased probably had no intent to mislead or conceal would appear reasonable from the answer to the next question in the application: "13. Who is your usual medical attendant? Dr. Ferree, address Buena Park."

The trial court was justified in concluding that the answer "No" to question 12 was induced by a belief on the part of deceased that the company was interested only in the matter of severe illnesses and that casual check-ups or consultations with the doctor for trivial matters were of no interest. This is not a case of having visited a strange doctor whose name was concealed. In response to the questionnaire, deceased gave the name of his regular doctor (to whom this visit was made) and gave defendant the right to receive full information from that doctor. That proposition may well have been the subject

of discussion at the time of taking the application because it would seem at least unusual that a man would state that he had a regular doctor but that he had not seen him in five years.

The court found that the answer to question 12 was untrue but further found: "that said declaration, though not true, was as to a trivial and transitory discomfort or malady and was not a material misrepresentation." Tested by the rules laid down in the *Travelers'* case and the other cases heretofore cited, this finding of the trial court was amply supported by the evidence. That being so, the defense to the policy necessarily fails.

Judgment affirmed.

Griffin, P. J., and Shepard, J., concurred.

A petition for a rehearing was denied January 12, 1960, and appellant's petition for a hearing by the Supreme Court was denied February 10, 1960.