[Civ. No. 40194. Second Dist., Div. Two. Feb. 1, 1973.]

LOS ANGELES MUTUAL INSURANCE COMPANY,
Plaintiff and Respondent, v.
JOHN G. CAWOG, Defendant and Appellant.

**COUNSEL**

John A. Dito for Defendant and Appellant.

Anderson, McPharlin & Conners for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Los Angeles Mutual Insurance Company (hereafter L.A.) sought declaratory relief as to its obligations under a policy of fire insurance issued to cover a hotel owned by John G. Cawog, and located at 501 East First Street in Los Angeles. Cawog answered and cross-complained for $10,000, the full value of the policy.

The trial court rendered a judgment exonerating L.A. from any liability under its policy on the grounds that Cawog had failed to renew a policy of fire insurance on the property which had previously been issued by another company, thus breaching a warranty of co-insurance. Cawog appeals.

■ The facts are not in dispute, thus this appeal presents a question of law in the interpretation of the so-called "Co-Insurance Clause" in the policy. (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 430 [296 P.2d 801, 57 A.L.R.2d 914]; *Universal Sales Corp.* v. *Cal. etc. Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665].)

### FACTS

On January 24, 1968, L.A. issued a policy of fire insurance in the amount of $10,000 on the Alameda Hotel, an old two-story structure owned by Cawog. On that date a similar $10,000 policy issued by the Jefferson Insurance Company was in effect. L.A.'s policy contained the following: "It is understood and agreed that this policy being written in the amount of $10,000 is 50% of all contributing insurance. It is hereby warranted that all contributing insurance shall be maintained to the extent that this policy participation will not exceed said 50%." The Jefferson policy expired on August 1, 1968, and was not renewed. The building was damaged by fire on October 1, 1968, and evidence was offered which set the amount of the loss in excess of $20,000. (The court made no findings as to the amount of the loss because of its legal conclusion that L.A. was "exonerated of liability.")

### DISCUSSION

■ In support of the judgment, L. A. directs our attention to the following language in *Craig* v. *United States F. & G. Co.,* 11 Cal.App.2d 644, at pages 645-646 [54 P.2d 486]. "It is well settled that, when a statement in the application for insurance is declared by the policy to be a warranty and the insured declares the statement is absolutely true, the falsity of such statement voids the policy *ab initio* [citations], and the question of

the materiality of the false statement is removed from the consideration of the court. One of the principal reasons for such warranty is to preclude all controversy as to the materiality or immateriality of the statement." This language is applicable to false statements as to existing facts made at the time of application.

We are not here dealing with false statements made in the application for insurance, the Jefferson policy was in force at the time of the application, hence *Craig* and other cases of similar import cited by L.A. are of little value in analyzing the situation here.

Insurance Code section 444 provides: "A warranty may relate to the past, the present, the future, or to any or all of these."

Insurance Code section 445 provides: "A statement in a policy, which imports that there is an intention to do or not to do a thing which *materially affects the risk*, is a warranty that such act or omission will take place." (Italics added.)

And finally, Insurance Code section 448 provides: "Unless the policy declares that a violation of specified provisions thereof shall avoid it, the breach of an immaterial provision does not avoid the policy."

The policy here does not provide for avoidance or termination of the policy for a failure to keep the other insurance in force, ergo the above referenced Insurance Code provisions, in light of the present facts, direct our attention to a consideration of the materiality of the questioned warranty and the objective served by its inclusion in the policy.

The rule in California is that no right to avoid or rescind an existing policy of insurance arises from the violation by the insured of a provision in the policy unless such provision materially affects the risk or the policy specifically sets forth that the breach will avoid the policy. (*Victoria S.S. Co.* v. *Western Assur. Co.,* 167 Cal. 348 [139 P. 807]; *Dunne* v. *Phoenix Ins. Co.,* 113 Cal.App. 256 [298 P. 49]; *Republic Indemnity Co.* v. *Martin,* 222 F.2d 438.)

The rule is the same regardless of the fact that the provision may be characterized as a warranty.

No California authority has been cited by the parties nor has our research disclosed any which deals squarely with the materiality of coinsurance clauses generally. The materiality of a warranty to keep other insurance in force must be tested, in the same manner as any warranty of future conduct, according to the facts and circumstances of the case.

■ "An insurance policy must be interpreted in the light of the reasonable and normal expectations of the parties as to the extent of coverage." (*Migliore* v. *Sheet Metal Workers' Welfare Plan,* 18 Cal.App.3d 201, at p. 204 [95 Cal.Rptr. 669].) ■ "If semantically permissible, the contract will be given such construction as will fairly achieve its manifest object of securing indemnity to the insured for the losses to which the insurance relates." (*Crane* v. *State Farm Fire & Cas. Co.,* 5 Cal.3d 112, 115 [95 Cal.Rptr. 513, 485 P.2d 1129].)

In *McKenzie* v. *Scottish U. & N. Ins. Co.,* 112 Cal. 548 [44 P. 922], the insured warranted to keep watchmen on duty on the insured premises, a mill, and to obtain permission of the insurer before shutting down the premises for more than 30 days. The insurance was voided when a fire occurred after the mill had been shut down and while no watchman was on duty. This was a warranty directly affecting the risk.

*Purcell* v. *Pacific Automobile Ins. Co.,* 19 Cal.App.2d 230 [64 P.2d 1114] found materiality in a warranty in a liability policy that the automobile would be principally used and garaged in Bakersfield, California. The insured instead kept the car in Los Angeles. The basis of the ruling was that premium rates are higher for the Los Angeles area because of a greater traffic hazard. On the other hand, *Republic, supra,* dealt with a warranty that the car would only be "garaged" in a specific city in Los Angeles County. The federal court distinguished *Purcell* on the grounds that the "use" of the car materially affected the risk rather than the place it was garaged, pointing out that the car could be used over a wide area no matter where it was kept. Thus the failure of the warranty to circumscribe use of the car rendered its breach immaterial, even though the insured moved the car to another state.

*Zimmerman* v. *Continental Life Ins. Co.,* 99 Cal.App. 723 [279 P. 464], held immaterial a promise in an accident policy to continue as a regular reader of a daily newspaper, the promise being unrelated to the risk.

In the so-called Lloyds of London cases (*Rittenhouse Foundation, Inc.* v. *Lloyds London,* 443 Pa. 161 [277 A.2d 785]; *Romanos* v. *Home Insurance Co.,* 355 Mass. 499 [246 N.E.2d 173]; *National Factors, Inc.* v. *Holford,* 27 App.Div.2d 377 [279 N.Y.S.2d 470]) the insured warranted that other insurance with a domestic American company would be kept in force.

In *Rittenhouse,* page 789, footnote 6, the court described the materiality of such warranty: "As these cases indicate, the raison d'etre of the warranty clause is that Lloyd's maintain no investigating or other servicing facilities

in this country and frequently rely altogether on domestic carriers in whose judgment and business policies Lloyd's have confidence."

And in *Millers' Nat. Ins. Co., Chicago, Ill.* v. *Witchita Flour M. Co.,* 257 F.2d 93, at page 104: "There is no controversy over the fact that such a clause is contained in the Lloyd's policies because the Lloyd's group had in this country no facilities for investigating and adjusting losses. For such services Lloyd's relied on domestic companies." In those cases the materiality of the warranty was clear.

■ In the case at bar the failure of Cawog to renew the Jefferson policy did not increase the risk of fire as did the failures in *McKenzie.* The question to be answered is, what did L.A. intend to achieve by the inclusion of such a requirement in the policy? Did the breach affect the risk in some other way or materially impair the rights or expectations of L.A.?

L.A. offered no evidence that the premiums were affected by the disputed warranty nor that the presence in the picture of the other insurance company affected the policy other than to provide a base for computing L.A.'s share of the loss. The trial court made no specific findings as to materiality but rather included a general statement of materiality in its conclusions of law.

The clause under consideration is designated a "co-insurance clause." ■ Coinsurance means a relative division of the risk between insured and insurer and such clauses are "designed to compel the insured, either as self-insurer or otherwise, to carry insurance on the risk. . . ." (*Home Ins. Co., New York* v. *Eisenson,* 181 F.2d 416, at p. 418; *Templeton* v. *Insurance Co. of North America* (Mo.App.) 201 S.W.2d 784; 6 Appleman, Insurance Law and Practice, § 3866.)

■ "The effect of a coinsurance clause is to reduce the liability of an insurer in terms of the percentage of coverage which the clause requires the insured to maintain. That is to say, coinsurance clauses in substance require the insured to maintain insurance on the property covered by the policy in a certain amount and stipulate that upon his failure to do so, the insured shall become a coinsurer and bear his proportionate part of the loss on the deficit." (16 Couch on Insurance (2d ed. 1966) § 62:124; also see *Commercial Union Assur. Co.* v. *Preston,* 115 Tex. 351 [282 S.W. 563, 45 A.L.R. 1016]; *Hilton* v. *Federal Ins. Co.,* 118 Cal.App. 495 [5 P.2d 648].)

■ "From its very nature such a provision can only take effect where the actual loss is partial and less than the amount of the insurance; and in effect it brings to a partial loss the situation which necessarily obtains in the case of a total loss where the owner has insured his property for less than

its actual value." (*Templeton* v. *Insurance Co. of North America, supra*, 201 S.W.2d 784, at p. 786.)

█ ·Where the loss exceeds the insurance coverage, as appears to be the case here, there is no contribution by the insurer beyond the terms of the policy. (Reed & Thomas, *Adjustment of Property Losses* (3d ed.) p. 404.)

█ It is only reasonable to conclude that the purpose of the coinsurance clause in the instant contract was to limit L.A.'s liability to 50 percent of the loss. So long as that limit was maintained it appears immaterial, whether the other 50 percent was covered by a policy of insurance or by Cawog as a self-insurer. More importantly, Cawog could have reasonably understood that it was of no consequence, whether the remaining 50 percent came from insurance coverage or from his own resources as self-insurer.

█ Even in the presence of the other insurance, i.e., absent a breach of the warranty, L.A. would pay 50 percent. Presumably their premiums were predicated upon such risk. The premiums were paid, so L.A. is being asked to respond to no greater obligation than it undertook. It had an expectation of only $10,000 additional insurance. That figure can be used for any prorating or computation if the amount of the loss requires it.

Two other clauses limiting the liability of the insurer are to be found in the policy. The extended coverage clause need not detain us since it does not relate to the loss which occurred.

█ The debris removal clause which provides for payment of the expense of removal of debris after fire loss requires only brief comment. That clause provides the following: "The total liability under this policy for both loss to property and debris removal expense shall not exceed the amount of insurance applying under this policy to the property covered.

"This company shall not be liable for a greater proportion of such debris removal expense than the amount of insurance under this policy bears to the whole amount of insurance covering the property against the peril causing the loss, whether or not such other insurance covers such expense."

The foregoing would not only limit debris removal as a portion of the policy coverage, i.e., both loss and debris removal together could not generate more liability for the insurer than the policy limit, but would treat the insured as if another policy in force did cover debris removal. By the same token, if such additional coverage could be proven, it would be available to the insurer by way of contribution. In any event, as to both clauses, the absence of another insurer did not serve to extend the risk. Neither clause would be relevant to L.A.'s requirement of additional coverage. Conse-

quently neither clause would make the rider a material provision for the purposes of avoiding the policy.

Elsewhere in the policy is a "70 percent average" clause which limits the liability of L.A. to a portion of the loss which the insurance bears to 70 percent of the cash value of the property. This latter provision may serve to reduce L.A.'s contribution below the policy limits, depending upon the finding of the trial court as to the dollar value of the property and the loss.

As noted earlier the trial court found no liability because of the breach of warranty and correspondingly made no findings as to the amount of the loss, hence we are unable to simply enter judgment for Cawog for the full value of the policy.

The judgment is reversed and the cause is remanded for additional findings on the value of the property and the amount of the loss. The trial court is directed to enter judgment for Cawog in the amount dictated by those findings.

Herndon, Acting P. J., and Fleming, J., concurred.