[No. B022012. Second Dist., Div. Three. Feb. 4, 1988.]

IMPERIAL CASUALTY AND INDEMNITY COMPANY, Plaintiff, Cross-defendant and Respondent, v.
LEVON SOGOMONIAN et al., Defendants, Cross-complainants and Appellants.

170

**COUNSEL**

Rafael Chodos for Defendants and Appellants.

Burns, Palumbo, Milam & Baronian and Bruce Palumbo for Plaintiff and Respondent.

## OPINION

**CROSKEY, J.**—Defendants Levon and Elichka Sogomonian (herein defendants) appeal from a summary judgment entered in favor of plaintiff Imperial Casualty and Indemnity Company (herein Imperial) on both Imperial's complaint and defendants' cross-complaint.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 14, 1982, Imperial issued a homeowner's policy to defendants which provided casualty and fire insurance protection for defendants' home. On or about October 9, 1982, defendants' home was destroyed by fire. Following an investigation, Imperial concluded that certain misrepresentations and a number of omissions had been made by the defendants in their application for the policy which they had submitted to Imperial on June 7, 1982. Based thereon, Imperial filed this action on August 15, 1983, seeking: 1. Rescission of the policy *ab initio,* together with the judgment of the court so declaring; and

2. Repayment, with interest, of advance payments (against the then anticipated fire insurance proceeds) of $30,300 which Imperial made to the defendants on or about November 18, 1982.[1]

On November 30, 1983, defendants filed a cross-complaint which sought compensatory and punitive damages allegedly arising from Imperial's breach of the insurance policy contract, breach of the covenant of good faith and fair dealing implied therein and violation of the provisions of Insurance Code section 790.03, subdivision (h).

In its motion for summary judgment Imperial produced evidence that the defendants, in responding to questions in the policy application, (1) specifically denied (for the immediately preceding three years) any loss history and any policy cancellations or renewal refusals and (2) *failed* to include the following facts: 1. That in February of 1980 (within three years of their application to Imperial) defendants suffered landslide damages to their property which resulted in a legal action for $500,000 in damages filed against them by a downhill neighbor. This claim was submitted by the

---

[1] Although not relevant to the issues here presented, Imperial in the same complaint also sought damages from another defendant, Larklo Dersarkisian, dba Derian Insurance Agency (Derian), for alleged negligence and fraud committed by said defendant in the preparation and submission of the defendants' June 7, 1982, application to Imperial. That claim was not affected by the award of summary judgment against the defendants and is still awaiting trial in this action. In declarations filed in his successful opposition to Imperial's contemporaneous motion for summary judgment against him, Derian stated that he had prepared the application based upon information given him by the defendants.

defendants to their then insurance carrier, Equitable General Insurance Company;

2. That in early 1981 defendants suffered an uninsured loss by theft of precious stones exceeding $100,000 in value;

3. That on December 12, 1981, Underwriters Insurance Company had cancelled a homeowner's policy which it had previously issued on the same property here involved;

4. That on March 29, 1982, defendants had presented a water damage claim to Blue Ridge Insurance Company with respect to this same property;

5. That, on April 5, 1982, over two months prior to the submission of the application to Imperial, the defendants had been notified by Blue Ridge Insurance Company of the nonrenewal of the homeowner's insurance policy which that company had theretofore issued. Subsequently, on July 19, 1982, just a few days after the issuance of Imperial's policy, defendants were informed that the reason for such nonrenewal was substandard property maintenance by defendants of the same property here involved. Defendants did not ever provide such information to Imperial;

6. That at the time of the application, there was pending a lawsuit with Equitable Life Assurance Society, wherein that company sought to rescind a health policy on the grounds that defendants had made material misrepresentations and omissions in the application for that policy;

7. That at the time the application was made to Imperial defendants had a second mortgage on their property with Alliance Bank (the existence of a first mortgage with American Savings & Loan Association *was* disclosed; however, the total owed on the home was approximately $425,000 of which nearly one-half, or $200,000, was secured by the undisclosed second trust deed).

Imperial also offered the deposition testimony of one of its former underwriters who was responsible for making the decision to issue the subject policy. She testified that she relied on defendants' application and had she known the "true facts" she would not have approved the issuance of the policy.

In their response to the summary judgment defendants did not dispute that the aforesaid statements in the application were untrue or incomplete

and they effectively conceded that the described omissions had occurred.[2] However, they contended that such statements and omissions were either irrelevant or immaterial, or claimed that the "true facts" were known to Derian who, defendants claim, was the agent of Imperial rather than defendants. In short, defendants presented no serious dispute as to the accuracy of Imperial's factual claims. Indeed, in their brief before this court defendants make clear that, apart from their arguments on materiality, there is no real dispute as to the truth of Imperial's claim of concealment. Based on this record, the trial judge granted summary judgment on both the complaint and defendants' cross-complaint.[3] This appeal followed.

## CONTENTIONS ON APPEAL

Defendants first contend that entry of summary judgment was improper. They assert essentially two arguments in support of their position: 1. That while no dispute may exist as to the fact that defendants omitted certain matters from their application,[4] there are disputed factual issues as to Derian's agency and whether the omissions were material; and

2. That even if the trial court was correct in concluding that Imperial was entitled to rescission, it was error to grant a judgment against defendants on their cross-complaint. Defendants contend that that pleading raised issues of fact not addressed by Imperial's motion which related to alleged violations by Imperial of its statutory obligations under Insurance Code section 790.03, subdivision (h).[5]

---

[2] In the summer of 1982, defendants had obtained a fine arts policy (covering art objects, rare books, silver, gold and furs) from Lloyds of London. This policy was obtained on an application substantially identical to the one submitted to Imperial. Following the October 1982 fire Lloyds filed a similar action for rescission (Lloyds of London v. Sogomonian, LASC No. C 464372, of which this court takes judicial notice). On May 18, 1987, the trial court granted a motion for summary adjudication of issues in favor of Lloyds which concluded that defendants had made material misrepresentations and that the policy was properly rescinded.

[3] Although the issues raised by the cross-complaint were not the subject of competing declarations or argument before the trial court, the judge, in granting Imperial a judgment, apparently assumed that if Imperial was entitled to a rescission *ab initio,* then *all* of the claims in the cross-complaint must fail as a matter of law.

[4] Defendants do not dispute here, nor did they in the trial court, that Imperial in deciding to issue the policy relied solely on the information supplied by defendants in their application.

[5] In their cross-complaint defendants also alleged causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing and declaratory relief. However, on appeal defendants apparently concede that a rescission of the policy *ab initio* would dispose of those claims. It is thus only the section 790.03, subdivision (h) claims which they contend are still viable even in the face of such a rescission.

In addition, defendants contend that the judgment is defective in that it is not clear just what relief has been granted to Imperial or that all issues between the parties have been resolved. For example, has Imperial received a judgment of rescission *ab initio,* or is the rescission effective as of some other date? Are defendants liable for monetary damages and, if so, in what amount?

We conclude that the first two arguments are without merit and that a summary resolution of Imperial's rescission claim and defendants' cross-complaint was proper. However, we agree, at least in part, with the defendants' objections to the fact and form of the judgment which was entered. We therefore reverse, but with directions as to certain limited further proceedings.

## DISCUSSION

1. *The Information Which Defendants Failed to Disclose Was Material and Summary Resolution of Imperial's Rescission Claim Was Proper.*

■ Summary judgment is properly granted only when the evidence in support of the motion establishes that there is no triable issue of material fact and that the moving party is entitled to judgment as a matter of law. (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].) This circumstance exists when the evidence in support of the moving party would be sufficient to sustain a judgment in his favor and the opposing party has not presented any facts which give rise to a triable issue of material fact. (*Kallen* v. *Delug* (1984) 157 Cal.App.3d 940, 948 [203 Cal.Rptr. 879]; *Sebastian International, Inc.* v. *Peck* (1987) 195 Cal.App.3d 803, 807 [240 Cal.Rptr. 911].) ■ This is such a case.

In their brief, defendants effectively conceded that of the established material issues of fact claimed by Imperial, they only really disputed three: [6]

a. Defendants deny that Blue Ridge Insurance Company had refused to renew their previous homeowner's policy. However, they do not dispute

---

[6] Of the remaining three issues which defendants describe in their brief as being in dispute, two were not even asserted by Imperial in the current motion (i.e., that defendants had perpetrated an actual fraud on Imperial and had committed arson by setting fire to their own home). These claims had been raised by Imperial in an earlier motion, which was not ruled upon by the trial court, but had been abandoned in the motion which led to the judgment before us. The third issue did not involve a factual dispute at all, but was simply an objection by defendants to Imperial's conclusionary assertion that it was entitled to rescission.

that a nonrenewal notice was received by Derian prior to the submission of defendants' application to Imperial and that the reason Blue Ridge subsequently gave for such nonrenewal was defendants' substandard maintenance of their property (a fact which they did not report to Imperial). Defendants argue that Derian had, on their behalf, already sent (several weeks earlier) a notice of cancellation of the policy to Blue Ridge. Defendants therefore conclude that the nonrenewal notice was a nullity and did not need to be mentioned in the application. Apart from the fact this is a little like the face saving rejoinder of the discharged employee ("you can't fire me, I quit"), it does not raise a triable issue with respect to Imperial's claim that the fact of the receipt of the notice was not disclosed as requested by the application form;

b. Defendants argue that Derian (whom they acknowledged they had "trusted . . . to handle all my insurance needs with respect to homeowner's insurance for many years prior to my getting the Imperial policy") was not their agent when he helped them prepare the application, but rather he was acting as the agent of Imperial. Defendants offer only a conclusionary assertion in their declaration that they believed that Derian was Imperial's agent. Imperial filed objections to this evidentiary submission by defendants[7] and pointed to Derian's declaration in which he expressly stated that he prepared the application based upon "information supplied by the defendants." In his deposition testimony, Derian testified that he felt he was acting as an insurance broker, not as an agent of Imperial. In fact, he testified that the application signed by the defendants was submitted to a surplus lines broker known as Canon Insurance Service and was printed on a form supplied by that company. It was Canon, not Derian, who actually placed the insurance with Imperial. In addition, Derian stated in his declaration that he had no knowledge concerning four of the factual omissions made by defendants (see Nos. 1, 2, 6 and 7, at pp. 174-175, *ante*), did not dispute two (see Nos. 4 and 5, at p. 175, *ante*), and was aware of the circumstances relating to only one (see No. 3, at p. 175, *ante*). In view of such testimony it is clear that there simply was no evidence presented by defendants to demonstrate that the contents of the application were not entirely their responsibility. Derian clearly acted as nothing more than defendants' scrivener. Under these circumstances we conclude that Derian, if the agent of anyone, was the agent of the

---

[7] For reasons not disclosed by the record, the trial court apparently did not rule on this objection. The failure by Imperial to secure such a ruling constitutes a waiver of the objection. (*Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 698 [39 Cal.Rptr. 64].) However, even if considered, the self-serving claim to which the objection had been directed was not sufficient, in light of this record, to raise a triable issue as to Derian's agency.

defendants. (Ins. Code, §§ 33, 1623; *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108, 117 [132 Cal.Rptr. 796]);

 c. While defendants concede that they were aware that their property had suffered from earth movement and subsidence as claimed by Imperial, they argue that these were tiny "popouts" or had occurred so far from the house that they were not significant, and therefore were not material and there was no reason to disclose them. Thus, again there is no triable issue of fact as to defendants' nondisclosure of the landslide and the resulting litigation with a downhill neighbor. Defendants' additional argument that this was not a "loss" on their homeowner's policy, and therefore not within the scope of Imperial's prior loss inquiry, is fatuous.

Given the state of this record and defendants' concession in their brief, we are compelled to the conclusion that no factual dispute exists with respect to the fact of defendants' concealment of certain information requested by Imperial. Moreover, there is no factual dispute that Imperial issued the policy in reliance on the truth of the statements made by the defendants and that Imperial's underwriter has stated that had Imperial known the actual facts, which only came to light during the post fire investigation, it would not have issued the policy.

 The defendants, however, contend that the information omitted from the application was not material and that they are entitled to a trial on that issue. The general rules applicable to a determination of such materiality were well summarized by the Supreme Court in *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 915-916 [109 Cal.Rptr. 473, 513 P.2d 353]. "It is generally held that an insurer has a right to know all that the applicant for insurance knows regarding the state of his health and medical history. [Citations.] Material misrepresentation or concealment of such facts are grounds for rescission of the policy, and an actual intent to deceive need not be shown. [Citations.] Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. (Ins. Code, § 334; [citation].) The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law. [Citations.]"

These rules also find support in the express provisions of the Insurance Code where heavy burdens of disclosure are placed upon both parties to a contract of insurance and any material misrepresentation or the failure,

whether intentional or unintentional, to provide requested information permits rescission of the policy by the injured party.[8]

In *Williamson & Vollmer Engineering, Inc.* v. *Sequoia Ins. Co.* (1976) 64 Cal.App.3d 261 [134 Cal.Rptr. 427], rescission of an engineering firm's malpractice policy by the insurer was affirmed where the insured, in the application, had denied knowledge of any circumstances which might result in a claim. Such denial was made at a time when the insured was in possession of an architect's letter asserting the existence of major deficiencies in a certain project on which the insured had performed engineering services. The court noted that the policy distinguished between negligent acts committed during the policy period and those committed prior to its inception and that it was important to the insurer to determine if the insured had knowledge of any claimed prior negligent acts. The court concluded that the materiality of the insured's negative representation was established by the terms of the policy and (citing *Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d 904) the fact that the question was asked on the application. In addition, as here, there was evidence that had the insurer known the truth it would not have provided insurance without an exclusion for the prior claim. Quoting from a case which dealt with an analogous problem, the court concluded that " 'An insurance company is entitled to determine for itself what risks it will accept, and therefore to know all the facts relative to the applicant's physical condition. It has the unquestioned right to select those whom it will insure and to rely upon him who would be insured for such information as it desires as a basis for its determination to the end that

---

[8]The relevant sections of the Insurance Code are:

"§ 330. *Concealment defined.* Neglect to communicate that which a party knows, and ought to communicate, is concealment.

"§ 331. *Effect of concealment.* Concealment, whether intentional or unintentional, entitles the injured party to rescind insurance.

"§ 332. *Required disclosure.* Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining.

"§ 334. *Materiality.* Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries.

"§ 356. *Time of reference.* The completion of the contract of insurance is the time to which a representation must be presumed to refer.

"§ 358. *Falsity.* A representation is false when the facts fail to correspond with its assertions or stipulations.

"§ 359. *Effect of material false representation.* If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false.

"§ 360. *Materiality.* The materiality of a representation is determined by the same rule as the materiality of a concealment."

a wise discrimination may be exercised in selecting its risks. [Citation.]' (*Robinson* v. *Occidental Life Ins. Co.* (1955) 131 Cal.App.2d 581, 586 [281 P.2d 39]. [Citation.].)" (64 Cal.App.3d at p. 273.)

■ That is not to say, however, that a mere incorrect answer on an insurance application will give rise to a defense of fraud, where the true facts, if known, would not have made the contract less desirable to the insurer. Moreover, the trier of fact is not required to believe the "post mortem" testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed. (*Thompson* v. *Occidental Life Ins. Co., supra,* 9 Cal.3d at p. 916.)

■ Defendants, relying on this caveat, argue that the issue of materiality should not be resolved summarily but rather the trier of fact should determine if the omissions and false representations were material. **(8)** However, that materiality, as Insurance Code section 334 tells us, must be determined "solely by the probable and reasonable influence" which the admittedly undisclosed information would have had upon Imperial's decision to issue the policy. This is a *subjective* test; the critical question is the effect truthful answers would have had on Imperial, not on some "average reasonable" insurer. (*Burns* v. *Prudential Ins. Co.* (1962) 201 Cal.App.2d 868, 871 [20 Cal.Rptr. 535].) ■ Given this rule and the nature of the renewal, cancellation, litigation and loss history which defendants admittedly kept from Imperial, *especially when such facts are viewed in light of their cumulative impact,* it is difficult to understand what triable issues remain with respect to this question. Defendants offer us no evidentiary assistance on this point, but content themselves with the naked argument that since a jury might "disbelieve" all of the uncontradicted evidence presented by Imperial, they are entitled to a trial on the question of materiality. We disagree.[9]

---

[9]The cases upon which defendants rely do not support their position. *Holz Rubber Co., Inc.* v. *American Star Ins. Co.* (1975) 14 Cal.3d 45 [120 Cal.Rptr. 415, 533 P.2d 1055, 79 A.L.R.3d 518], involved the construction of an ambiguous warranty provision for maintenance of an automatic sprinkler system by the insured; in *Scroggs* v. *Northwestern Mut. L. Ins. Corp.* (1959) 176 Cal.App.2d 300 [1 Cal.Rptr. 189], the court affirmed the trial court's factual determination, *in the face of conflicting evidence,* that the insured's failure to disclose a single visit to a doctor for treatment of a minor disposition was not material as such fact, even if known by the insurer, would have had no impact on the decision to issue the policy of life insurance; and finally, in *Los Angeles Mut. Ins. Co.* v. *Cawog* (1973) 30 Cal.App.3d 378 [106 Cal.Rptr. 307], the court construed a co-insurance warranty (which obligated the insured to purchase sufficient co-insurance so as to limit the insurer's liability to 50 percent of any loss) to include the possibility that the insured could be "self-insured" for 50 percent without breaching the warranty or making it false.

We cannot review the application submitted by the defendants in this case without concluding that the information sought by Imperial and denied to it by the false negative answers and omissions of defendants were material to Imperial's decision to provide insurance coverage. That conclusion is the only one that reasonably can be drawn from the undisputed evidence presented. (Code Civ. Proc., § 437c, subd. (c); *Hirsch* v. *Blish* (1977) 76 Cal.App.3d 163, 166 [142 Cal.Rptr. 646].) It is supported by the nature of the insurance coverage which defendant sought, the quality and quantity of the information which was not disclosed and the fact that Imperial specifically requested the information on its application and thereafter relied upon it in issuing the policy. The uncontradicted evidence of Imperial's underwriter confirms the importance which Imperial attached to the information. Under these circumstances, the materiality of defendants' concealment is established as a matter of law. (*Burns* v. *Prudential Ins. Co., supra,* 201 Cal.App.2d 868, 871-872.)

2. *Rescission of the Policy of Insurance Bars Any Claim by the Insured Under Insurance Code Section 790.03, subdivision (h).*

■ ■ ■ ■ As we have concluded that defendants made material false statements in their application, Imperial has a statutory right to rescind the policy. (Ins. Code, §§ 331, 359; Civ. Code, § 1692.)[10] ■ Such right was exercised in a timely manner (Ins. Code, § 650) and the rescission is from "the time the representation becomes false" (Ins. Code, § 359) and, of necessity, will avoid liability even on *pending* claims. (*Barrera* v. *State Farm Mut. Automobile Ins. Co., supra,* 71 Cal.2d 659, 666, fn. 4.) ■ The cited provisions of the Insurance Code are part of a statutory scheme which reflects a deliberate distinction between "rescission" and "cancellation." The former is a *retroactive,* while the latter is a *prospective,* termination of the policy. (*Id.,* at pp. 663-664, fn. 3.) Thus, a rescission effectively renders the policy totally unenforceable from the outset so that there was never any coverage and no benefits are payable.

■ Defendants do not take issue with these general principles, but contend that Imperial has violated its statutory obligations under Insurance

---

[10] "[U]nder the present interpretation of the Insurance Code, an insurer may rescind the contract of insurance *ab initio* for a material misrepresentation—even though the insured's misstatements were the result of negligence or, indeed, the product of innocence." (*Barrera* v. *State Farm Mut. Automobile Ins. Co.* (1969) 71 Cal.2d 659, 666, fn. 4. [79 Cal.Rptr. 106, 456 P.2d 674])

Code section 790.03, subdivision (h)[11] and that defendants' right to recover damages for such violations transcends rescission of the policy.[12]

Insurance Code section 790.03 is an integral part of extensive legislation designed to regulate the trade practices of the business of insurance in California, including the prohibition of certain methods of competition and unfair or deceptive acts or practices. (Ins. Code, § 790.) Specific prohibited acts were originally included in section 790.03, and subdivision (h), which was added in 1972, condemned certain unfair claims settlement practices. A private right of action to enforce violations was recognized in favor of insured parties in *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994, 1001 [110 Cal.Rptr. 470], where the court held that ". . . the person to whom the civil liability runs may enforce [the section] by an appropriate action."

In *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], this right of action was extended to third party claimants. In that case, the court noted that an examination of subdivision (h) "demonstrates that it was intended to prohibit unfair settlement practices by insurers *directed against both claimants and insureds*." (*Id.,* at p. 888; italics supplied.) As defendants are not third party claimants their right to assert a claim must rest upon the assumption that they are insureds.[13]

There is some authority for the proposition that an insurer owes a duty to the insured under section 790.03, subdivision (h) even where it is established

---

[11] The relevant subsections of section 790.03, subdivision (h), upon which defendants rely in their cross-complaint provide as follows: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance: [¶] [¶] (h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] [¶] (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. [¶] (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶] [¶] (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information."

[12] See footnote 5, *ante.*

[13] We have been cited to no authority which suggests that a private action under section 790.03, subdivision (h) could be prosecuted by anyone other than an insured or a claimant under a particular policy.

that there is no coverage and thus no duty either to indemnify or defend. (*Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 190 [231 Cal.Rptr. 791].) However, this may well be appropriate where the dispute is limited to the question of coverage as to a particular claim, since there still remains viable the underlying relationship of insurer-insured. But what of the circumstance where the dispute between the insurer and the insured goes beyond the issue of coverage and results in the rescission of the entire contract of insurance?

"A contract is extinguished by its rescission." (Civ. Code, § 1688.) █ The consequence of rescission is not only the termination of further liability, but also the restoration of the parties to their former positions by requiring each to return whatever consideration has been received. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 869, p. 781.) █ Here, this would require the refund by Imperial of any premiums and the repayment by the defendants of any proceed advance which they may have received. The policy would be "extinguished" *ab initio,* as though it had never existed. In other words, defendants, in law, never were insureds under a policy of insurance. That status cannot exist in a vacuum, but must necessarily depend upon the existence of a valid policy of insurance.[14] No compelling reason has been suggested to us, nor can we conceive of any, as to why defendants, having obtained the policy upon the basis of material concealment, should now have a greater right under section 790.03, subdivision (h) than a party whom Imperial may have declined to insure because of truthful answers in a policy application.

█ We therefore hold that upon a rescission of a policy of insurance, based upon a material concealment or misrepresentation, all rights of the insured thereunder (except the right to recover any consideration paid in the purchase of the policy) are extinguished, including the right or standing to prosecute a claim against the insurer for a violation of Insurance Code section 790.03, subdivision (h).[15] Therefore, as a matter of law, defendants

---

[14] This same thought was expressed in another context in *Heninger* v. *Foremost Ins. Co.* (1985) 175 Cal.App.3d 830 [221 Cal.Rptr. 303], where the court concluded that an action by a third party claimant under section 790.03, subdivision (h), was premature until the insured's liability was determined. The court noted (at p. 834): "There cannot be unfair claims settlement practices *in vacuo"* and that ". . . *Royal Globe* causes of action may arise under circumstances other than upon determination by a final judgment, *but the cases do not support nor can we perceive any legislative intent to create rights of action totally divorced from ultimate legal liability."* (Italics supplied.)

[15] We are not called upon to decide, and therefore do not reach or express any opinion on, the question of whether a third party claimant might be able to prosecute such a cause of action even though a rescission had occurred.

can assert no such claim here and the summary resolution of their cross-complaint was proper.[16]

### 3. *The Form of Judgment Was Defective and, in Any Event, a Judgment Should Not Have Been Entered.*

▇▇▇ Defendants finally argue that the judgment entered against them is defective in that it can not be determined from the judgment just what relief has been granted, and that a judgment should not have been entered at all, since the trial court had not yet resolved all of the issues between the defendants and Imperial. We agree.

In this case, Imperial's complaint against defendants essentially sought two forms of relief: (1) rescission of the policy and (2) recovery of money damages in the amount of the policy proceeds advance which it had made to defendants. However, the judgment simply provided that Imperial was "entitled to judgment as a matter of law on the complaint and cross-complaint as against defendants and cross-complainants Levon and Elicka Sogomonian and to recover costs in the sum of $ _____ ." The judgment did not purport to make a specific damage award in Imperial's favor nor, for that matter, did the court receive any evidence as to the amount of the proceeds advance made or premiums collected.

▇▇▇ It is the general rule that a judgment must be sufficiently certain to permit enforcement. While some uncertainties may be eliminated or resolved by reference to the pleadings (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, §§ 42-43, pp. 481-482), that will not save a judgment for money which fails to specify the amount. *(Kittle* v. *Lang* (1951) 107 Cal.App.2d 604, 612 [237 P.2d 673].) ▇▇▇ Here Imperial's entitlement to a judgment of rescission might well be salvaged by an examination of the complaint, but the money damage claim cannot. Moreover, since the only reference in the record to the amount of damages sought by Imperial is in the complaint, we are compelled to the conclusion that the issue of the amount of money damages to which Imperial may or may not be entitled has not, and could not have, been resolved by the judgment which was entered. Thus, there has not been a final determination of all of the rights and

---

[16]Our conclusion here should not result in an assumption by insurers that policy liability can, with impunity, be avoided or delayed by assertion of a claim for rescission. That is a tactic which is fraught with peril. Where no valid ground for rescission exists, the threat or attempt to seek such relief may itself constitute (1) a breach of the covenant of good faith and fair dealing which is implied in the policy *(Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 392, 401 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]) and/or (2) the commission of one or more of the unfair claims settlement practices proscribed by Insurance Code section 790.03, subdivision (h).

obligations in this action as between Imperial and the defendants. Entry of a judgment, therefore, was improper. (Code Civ. Proc., § 577.)

If, upon further proceedings in the trial court, it can be determined (whether by stipulation, summary proceedings or trial) the amount to which Imperial is entitled in the way of money damages, if any, then a final judgment as between these parties may be entered. (Code Civ. Proc., § 579.) Pending such final resolution, however, all that should have been done by the trial court was entry of an order granting summary adjudication of issues establishing (1) that Imperial was entitled to rescission of the policy of insurance on the grounds of defendants' concealment and misrepresentations and (2) that because of such rescission defendants were not entitled to any relief as against Imperial upon their cross-complaint.[17]

## DISPOSITION

The judgment is reversed, with directions to the trial court to make and enter a new order granting summary adjudication of issues which is consistent herewith and to conduct such further proceedings as may be appropriate to resolve any remaining money damage claims which may exist between Imperial and defendants. Each side shall bear its own costs on appeal.

Arabian, J., concurred.

**DANIELSON, Acting P. J.**—I respectfully dissent from the foregoing opinion and decision.

I concur with the majority opinion in all respects except (1) the conclusion that there was no merit in defendants' contention that the trial court erred in granting judgment against them on the cause of action in their cross-complaint alleging violations by Imperial of its statutory obligations under Insurance Code section 790.03, subdivision (h), and (2) the majority's holding that rescission of the policy of insurance bars any claim by the insured under Insurance Code section 790.03, subdivision (h)(hereafter subdivision (h)).

The majority opinion errs in that it is based upon a misunderstanding of the nature and purpose of subdivision (h).[1]

---

[17] Imperial's motion for summary judgment included a request for the alternative relief of summary adjudication of issues. The issues as to which Imperial sought such an adjudication essentially include those which we have here directed the trial court to include in its order.

[1] The relevant portions of Insurance Code section 790.03 are set forth in footnote 11 of the majority opinion, *ante,* at page 183, which I shall not repeat at this point.

The majority opinion treats the unfair practices proscribed by subdivision (h) as being dependent on the continued existence of the insurance contract. It holds that because, on rescission of that contract, all rights of the insured under the contract are extinguished, all rights of the insured to prosecute a claim against the insurer for violation of section 790.03, subdivision (h) are also extinguished. That is not the nature or the purpose of the statute.

The unfair practices defined in subdivision (h) are torts. They are not derivative torts, rooted in the insurance contract; they are separate, independent, statutory torts. They derive their life from the statute itself—not from the common law, and not from the insurance contract sold and issued by the insurer. By their very terms those statutory torts have nothing to do with the contract of insurance itself. They have to do, only, with prohibited unfair settlement practices by insurers directed against both their insureds and third person claimants. Those unfair practices are proscriptions imposed upon insurers by our Legislature as part of the public policy of the State of California. Stated another way, the statute imposes upon insurers a duty not to perform any of the described "unfair claims settlement practices."

The Legislature has the power and the right to establish the torts set forth in Insurance Code section 790.03.

"It is well settled that the Legislature possesses a broad authority both to establish and to abolish tort causes of action. As former Chief Justice Gibson put it over 30 years ago, 'Except as the Constitution otherwise provides, the Legislature has complete power to determine the rights of individuals. [Citation.] It may create new rights or provide that rights which have previously existed shall no longer arise . . . .' (*Modern Barber Col.* v. *Cal. Emp. Stab. Com.* (1948) 31 Cal.2d 720, 726 . . . ; accord, *Werner* v. *Southern Cal. etc. Newspapers* [(1950)] 35 Cal.2d 121, 125; *Ferreira* v. *Barham* (1964) 230 Cal.App.2d 128, 130 . . . ; *Lowman* v. *Stafford* (1964) 226 Cal.App.2d 31, 38-39 . . . .)" (*Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 439 [174 Cal.Rptr. 500, 629 P.2d 8]; see also, *Werner* v. *Southern Cal. etc. Newspapers, supra,* 35 Cal.2d 121, 129-130 [216 P.2d 825, 13 A.L.R.2d 252].)

" '[T]he Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object.' (*Silver* v. *Silver,* 280 U.S. 117, 122 . . . ; *Langdon* v. *Sayre,* 74 Cal.App.2d 41 . . . .)" (*Werner* v. *Southern Cal. etc. Newspapers, supra,* 35 Cal.2d 121, 125-126.)

The State of California has a compelling interest in protecting and bettering the rights and remedies of its citizens who suffer injuries and losses as

the results of the tortious acts of others; that is a permissible legislative object.

It is common knowledge that, today, the insurance business is a part of the fabric of the lives of everyone. It is also common knowledge that, today, persons who suffer losses which are covered by insurance must often wait five years or more before receiving compensation for losses suffered; and that result is only after years of agonizing, burdensome, expensive and long-drawn-out litigation which has become an oppressive burden on the injured persons, the taxpayers and the judicial system. Legislation, designed to correct that process, which is reasonable in its impact, is clearly in the public interest. It is a proper subject to be addressed by the policy making branch of our government. The statutory bad faith tort is a reasonable limitation placed upon the settlement practices of insurers by the Legislature.

In the case at bench the trial court granted summary judgment on both the complaint and defendants' cross-complaint. As the majority opinion points out, at page 176, *ante,* "[a]lthough the issues raised by the cross-complaint were not the subject of competing declarations or argument before the trial court, the judge, in granting Imperial a judgment, apparently assumed that if Imperial was entitled to a rescission *ab initio,* then *all* of the claims in the cross-complaint must fail as a matter of law." That decision was error. As has been pointed out above the alleged violations of subdivision (h) are separate and independent statutory torts; they do not depend upon the continued existence of the insurance contract, which has been rescinded; in the case at bench they depend only upon the acts and practices of the insurer directed at the insureds during the time before the insurance contract was rescinded.

I concur with the greater part of the decision in the majority opinion but I would also vacate the order granting the motion for summary judgment as to the cause of action alleging violations of subdivision (h).

A petition for a rehearing was denied February 23, 1988, and the opinion was modified to read as printed above. Danielson, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied April 21, 1988.