**Milagros MATILLA, et al., Plaintiffs,**

v.

**FARMERS NEW WORLD LIFE INSURANCE, Defendant.**

**No. C 96–1563 FMS.**

United States District Court, N.D. California.

March 4, 1997.

William D. Paoli, Paoli & Bratter, Oakland, CA, for Plaintiffs.

Thomas M. Herlihy and Margie R. Lariviere, Kelly & Herlihy, San Francisco, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MO-
TION FOR SUMMARY JUDGMENT;
DENYING PLAINTIFFS' CROSS-
MOTION

SMITH, District Judge.

## INTRODUCTION

Plaintiffs' breach of contract case raises the question whether a person's failure to accurately portray his immigration status in an insurance application is reason for rescission of the contract after his death. The parties' cross-motions for summary judgment require the Court to determine whether such a misrepresentation is material to the contract as a matter of law. Defendant also asks the Court to grant summary judgment on plaintiffs' breach of the implied covenant because no contract existed, and plaintiffs' request for punitive damages because the company did not act in bad faith.[1]

## BACKGROUND

This action concerns a life insurance policy issued to Ignacio M. Matilla ("Ignacio" or "decedent") by defendant Farmers New World Life Insurance Company. Ignacio died in Bantog, Bulacan, Philippines on June 22, 1994, from multiple gunshot wounds suffered in a highway ambush. His death occurred within the two-year contestability period of his insurance policy. After an investigation that revealed that Ignacio had misrepresented his immigration status on his application, defendant denied benefits to Ignacio's wife and children.

Ignacio had entered the United States on May 30, 1989, using a Philippines passport bearing the name "Raymundo Villanueva." The parties agree that Ignacio did not enter this country legally. Ignacio was never issued a valid immigration visa number, although he and his wife had filed a petition for a permanent visa, which was approved on May 23, 1991. An approved petition does not confer any immigration rights, however; the petitioner's status changes only when a proper visa is issued and the petitioner uses it to enter the United States. At the time he was killed, Ignacio was in the Philippines awaiting final processing of his visa.

In January 1993, Ignacio submitted an application to defendant for a $100,000 "Flexible Universal Life Insurance" policy. Christy Santos, a Farmers insurance agent, assisted Ignacio in completing his application. When Santos asked Ignacio for his visa number, Ignacio left the room and returned with a passport, which he handed to Ms. Santos. She copied the visa number from the passport onto the application. On the basis of his application and a medical examination, defendant issued the life insurance policy effective February 17, 1993. The parties agree that Ignacio misrepresented his immigration status on the application.

Defendant discovered the misrepresentation during its claim investigation. Claim investigation is routine in cases in which the insured dies within the contestability period defined in his policy. Defendant's investigator located numerous Immigration and Naturalization Service documents indicating that Ignacio had not entered the United States legally, and did not have a valid visa. Defendant's claims department then questioned three underwriters as to whether Ignacio's immigration status would have affected their handling of the case. Three underwriters considered the question and concluded that it would have, because of a company rule requiring applicants to possess either a valid alien registration number or visa number.

In a letter to plaintiffs' counsel dated March 24, 1995, defendant rescinded Ignacio's policy and refunded his premium. On March 22, 1996, after unproductive informal negotiations with defendant, plaintiffs filed a complaint in state court, alleging that because the misrepresentation was immaterial defendant's failure to pay benefits was a breach of contract. Defendant timely removed the case to federal court based on diversity jurisdiction. Defendant's motion for summary judgment was filed on Novem-

1. The Court declines to reach these issues because of the parties' agreement with the Court at the outset of the litigation that the breach of contract cause of action would be determined first. Plaintiffs have limited their discovery to date in reliance on this agreement. (Matilla Decl. Ex. A at 35.)

ber 22, 1996, and plaintiffs' cross-motion was filed on December 12, 1996. At the request of the parties, the Court continued the hearing on the motion until February 14, 1997. The hearing was eventually vacated because the case had been referred to a district judge for a settlement conference. When the case did not settle, the Court took up the motion again.

## DISCUSSION

### I. Legal Standard

To withstand a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue of material fact in dispute. Fed. R.Civ.P. 56(e). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, "the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In opposing summary judgment, plaintiff is not entitled to rely on the allegations of his complaint. He "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

The Court does not make credibility determinations with respect to evidence offered, and is required to draw all inferences in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts ..." *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1335 (9th Cir.1980).

### II. Analysis

■ The parties agree that an insurer may rescind a policy if it proves that the insured made a false statement in his application that was material to the underwriting decision. The issue in this case is whether Ignacio's misrepresentation of his immigration status was material.

California courts disagree about the appropriate standard for determining materiality. One view is that materiality is established as a matter of law by the fact that the insurer put a question into writing and asked for a written answer. *See Thompson v. Occidental Life Ins. Co. of Cal.*, 9 Cal.3d 904, 109 Cal.Rptr. 473, 480, 513 P.2d 353, 360 (1973); *Cohen v. Penn Mut. Life Ins. Co.*, 48 Cal.2d 720, 312 P.2d 241, 244 (1957). Other cases hold that the materiality of the insured's answers to questions on an application depends on the nature of the information. Under this view, a misrepresentation is not grounds for rescission unless the true facts, if known, would have made the contract less desirable to the insurer. *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal.App.3d 169, 243 Cal.Rptr. 639, 644 (1988); *Ransom v. Penn Mut. Life Ins. Co.*, 43 Cal.2d 420, 274 P.2d 633, 637 (1954). Because the result would be the same in this case regardless of the standard applied, the Court declines to resolve this question of state law.

The application contained clearly understandable questions about citizenship, (Joint Statement of Undisputed Facts Ex. 3 at F55); defendant's underwriters and agents confirmed that they would not issue a policy to an applicant who did not have a valid visa, (Joint Statement of Undisputed Facts Ex. 10); and defendant's underwriting and agent guidelines require an applicant to possess a valid visa. (Lariviere Decl. Ex 3.) Defendant's employees also explained how immigration status is material, citing concerns about deportation, (Lariviere Decl. Ex. 1 at 27), and possible visits to unstable countries where health care is inadequate. (Matilla Decl. Ex. A at 37.) They also explained that

the company relies on the visa validation process to discover pre-existing health problems of applicants. (Patton Decl. ¶ 9.) Defendant's evidence supporting materiality is unrebutted.

Instead of rebutting defendant's evidence, plaintiffs raise conclusory challenges to its credibility. They note that the cases finding materiality generally involve health issues like smoking or heart disease, which are more directly relevant to life insurance than immigration status. *See, e.g., Old Line Life Ins. Co. v. Superior Court (Silvera Trust),* 229 Cal.App.3d 1600, 281 Cal.Rptr. 15 (1991); *Cohen v. Penn Mutual Life Ins. Co.,* 312 P.2d 241 (Cal.1957). They also assert that even if the concerns underlying defendant's position on citizenship were valid, Ignacio was not a risk because he had lived here for a number of years without being deported, and was financially stable.[2] Ironically, however, it was decedent's illegal status that led to his death. Finally, they claim that defendant's personnel describe the guidelines as discretionary,[3] and that defendant is unable to provide an example of an applicant being denied insurance because of his immigration status. (Matilla Decl. Ex. A at 29)[4]

■ The materiality of a question and answer in an insurance application is determined by a subjective test; the question is what effect truthful answers would have had upon the particular insurer, not some "average, reasonable" insurer. *Imperial Cas. & Indem. Co. v. Sogomonian,* 198 Cal.App.3d 169, 243 Cal.Rptr. 639, 644 (1988). If a plaintiff's only argument is that perhaps a trier of fact might disbelieve the insurer's evidence, summary judgment is appropriate.

*See Wilson v. Western Nat'l Life Ins. Co.,* 235 Cal.App.3d 981, 1 Cal.Rptr.2d 157, 163 (1991).[5]

In addition to challenging defendant's evidence, plaintiffs seek to excuse Ignacio's misrepresentation. First, they argue that Ignacio was under no duty to disclose information that he did not believe was significant. *See Miller v. Republic National Life Ins. Co.,* 789 F.2d 1336, 1340 (9th Cir.1986) (holding that failure to disclose three "strange thoughts" did not justify rescission); *Thompson,* 109 Cal.Rptr. at 480, 513 P.2d at 360 (declining to question trier of fact's determination that leg circulation problem was not pertinent). This exception is interpreted more narrowly than plaintiffs urge. It excuses an applicant for failing to disclose a fact because he fails to understand the meaning of medical terms or information. *Cohen,* 312 P.2d at 244. Ignacio understood his immigration status, and was pursuing a change in it.

Moreover, the cases cited by plaintiffs finding insignificance are distinguishable. The insureds in those cases gave incomplete responses to open-ended cases; Ignacio gave an affirmatively false answer to a closed question. *See Life Ins. Co. of N. Am. v. Capps,* 660 F.2d 392, 394 (9th Cir. 1981) (holding that rescission justified because plaintiff answered question regarding heart problems negatively despite knowledge of heart condition); *Robinson v. Occidental Life Ins. Co.,* 281 P.2d 39 (Cal.Ct. App.1955). *But see Ransom,* 274 P.2d at 637 (finding applicant's misstatement regarding electrocardiogram immaterial because test was normal). The logical infer-

---

2. Defendant's guidelines allow for coverage of foreign nationals under certain circumstances. The company considers the length of time in the United States, intention to remain here, the purpose of the intended coverage, medical history, conditions in the country of origin, and ties to the United States (*e.g.,* residence, property ownership, business, etc.). The guidelines also specifically require a visa, however.

3. The witness actually testified that the company sometimes declines to follow *re* insurer's guidelines. (Lariviere Decl. Ex. 2 at 22.)

4. The relevant question, however, is whether any similarly situated person had been afforded identical insurance coverage, which would demonstrate that immigration status is immaterial. Plaintiffs have been unable to discover such a case.

5. A trier of fact is not required to believe the post-loss testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed. *Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 109 Cal.Rptr. 473, 480, 513 P.2d 353, 360 (1973). Because the guidelines corroborate the agents' opinions, however, the Court may appropriately grant summary judgment in favor of defendant.

ence from his misrepresentation is that he knew that his immigration status was important.

■ Second, plaintiffs argue that the insurance company was on notice that Ignacio's answers should not be relied upon, and therefore is estopped from rescinding the contract. *See Di Pasqua v. California W. States Life Ins.* Co., 106 Cal.App.2d 281, 235 P.2d 64, 66 (1951). They claim that the passport containing Ignacio's fraudulent visa had expired, which should have suggested a problem to defendant; however, plaintiffs do not demonstrate that defendant ever saw the pages of the passport that indicated it was expired. Plaintiffs' speculation that Santos may have seen the pages is insufficient. The pages do not appear in the file, and plaintiff Milagros Matilla testified that she was not paying attention when the passport was shown to Santos. (Lariviere Supp. Decl. Ex. 1 at 200.)

The Court finds that decedent's misrepresentation was material as a matter of law. Although the Court is sympathetic to plaintiffs' situation, the legal standards and the evidence presented require that defendant's motion for summary judgment be granted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED. Plaintiffs' cross-motion for summary judgment is DENIED.

SO ORDERED.